May it please the Court, my name is Eric Joe, I've served by law since working under the supervision of Peter Affizani and Catherine Davis. Again, I've already said which... Counsel, I have a problem. Okay. In order to reach a number, the expert for the plaintiff had to make some assumptions. And one of the assumptions he made was that the husband would outlive the wife. And that generated a number for the retiring women as a group. However... I think you've got a Wood v. City of San Diego. I think you're on the wrong case. Did I get the wrong case? You got the wrong case. I think Mr. Zao was terrified there for a minute. What? I picked the next one off my stack. All right. We'll start with ten minutes, okay? And Mr. Zao can recover from his shock here, okay? Thanks. Go ahead and start with the exhaustion argument. Okay. We ask that the Court reverse the decision of the BIA and remand the case for the consideration because Douglas Aguilar did exhaust his administrative remedies for the BIA, and he did not knowingly and intelligently waive his appeal. The Court's jurisdiction, because Aguilar exhausts his issue, because his act of filing an appeal has put the BIA on notice of the waiver of appeal issue, and that should be enough. Let's assume that's true, Mr. Zao. Where's the prejudice here? There are two prongs under Lozada, which, of course, tracks back to Strickland. You've got to show, number one, that there was, in fact, conduct by the attorney that fell well below the standard expected by lawyers, but, very importantly, you've got to show prejudice. I'm struggling with that prong. How was prejudice shown here? The prejudice occurs when the detainee still has plausible grounds for relief, and here that plausible ground is his claim under the Convention Against Torture, CAT. Would you kind of keep your voice up when you're speaking? Say that last statement again. Okay. Sorry. Here the detainee's plausible grounds for relief is his claim under the Convention Against Torture, CAT. The IJ, he dismissed his CAT claim, but he did so improperly. He based his dismissal on a determination of adverse credibility. However, he did not state any specific reasons as to how he made this determination. For a determination of adverse credibility to be valid, the IJ has to state specific cogent reasons as to why he made this determination here. He only made a conclusory statement that there were inconsistencies in his testimony. So is it your position, Mr. Zhao, that, in effect, your client has to win on the merits in order to relate back and overcome the exhaustion problem? In other words, which is first, the chicken or the egg, colored or otherwise? He doesn't have to show that he'll win on the merits. He only shows that he has a plausible claim in order to make his appeal. Is that right? Under Lozado and Strickland, is that the standard? Just a plausible claim? I thought that you have the burden to show prejudice. If what you're talking about is the case, it would be really easy to show prejudice under Strickland. It just has to be plausible. It doesn't have to be a really strong case at some high level of proof. Now, in order to show prejudice for the purposes of a waiver of appeal, he does he only has to show that he has a plausible grounds. He has to show that for his claim to prevail, he'd have to show it would be more likely than not that he'd be tortured if he returned to El Salvador. And I'm not sure that he does have a plausible claim that he would be. It looks like sometimes lesbians, gays, and bisexuals, and transvestites are harassed or beaten or otherwise abused, and the government turns a blind eye. But whether he is likely to be, whether he's even likely to be identified as such, I don't know if he has a plausible claim. Well, here again with this, the IJ dismisses improperly he did not consider, he did not state what reasons he dismissed this for. He simply made a conclusive statement that he did not come close to bearing his burden. Okay. And again, there's no way to review what factors he considered in his determination. Tell me about something else then. What you're saying is essentially the IJ gave insufficient consideration to it, as is shown by what he said. Have I got your argument right? Yes, the IJ did not, he did not, in order to dismiss a cat claim, he has to be able to provide, articulate his reasons for. Let me ask you something else. On his ineffective assistance of claim, as I understand it, Chanery says that they can adopt a procedure by case rather than by a rulemaking procedure. They adopted it in Lozada. There's not Lozada compliance. And it doesn't look that clear to me from the record that there's ineffective assistance. It looks like the lawyer told him, well, if you go back to El Salvador right away, waive appeal, you can get out of jail. And he said, I'd rather get deported and get out of jail than stay in jail and fight this thing further through appeal. I gather that's your part, right? This is part of my part, yeah. You might want to let her take over there. So our contention is that Ms. Malik's grounds, Ms. Malik's failure to inform Aguilar of the nonprivileged grounds for appeal were objectively unreasonable in this case. Like the Supreme Court said in the Sixth Amendment case, Flores-Ortega, the counsel has a constitutional duty to consult with the defendant about an appeal where there is reason to think a rational defense. The reason for Lozada compliance is so you can get the lawyer's side of the story. That's one of the reasons. And when you try to make your case for ineffective assistance without Lozada compliance, we don't know the lawyer's side of the story. It looks from what we do have here as though there's a really plausible reason why he would have waived appeal, and that is it gets him out of jail. And once he's deported to El Salvador, he's a free man. Oh, well, he's actually detained, so he doesn't ‑‑ it wouldn't be a get out of jail to waive his right to appeal. But even so, it doesn't necessarily show that it's knowing and informing ‑‑ a knowing and informed waiver if he waives based on some conversation that may have happened before the hearing without even understanding what happened at the hearing. So ‑‑ Now, he immediately filed his own notice of appeal, is that correct? That's correct. Proseggi filed a notice of appeal. Yes. Finally filed. How did that come about? Was he told that his lawyer had tried to waive his right, or he just thought, I'm taking this over myself? Well, in the hearing, there's a portion of the record at the close of the hearing, on the record at page 453 and 454 of the 2010 case, that indicates that Ms. Malik spoke with Mr. Aguilar following the hearing and asked him whether he understood what had transpired with the waiver. He doesn't respond to her questions directly. He seems to be indicating that he believes that the reason he lost his case is that they thought he was lying. And then following that, there was some reference to her saying, would you like me to come visit you later? And he said no. So we don't actually know what happens after that. We don't know from the record whether it's clear that he understood that there was a waiver or the implications for that waiver. I don't know whether this is part of your argument, but is there anything in the record that would support the IJ's finding of lack of veracity? In terms of? Do you mean lack of? Can you rephrase the question, please? Well, I wondered, they found that he was not reliable, that he was incredible. And what was in the record that might support that, if anything? Even if there was something in the record, the IJ has to state the reasonings behind his. I know the rule, but what's in this record? Anything? Well, there was in the record, it was found that when he had an interview with an immigration agent, that he did not disclose that he was bisexual. He explained that as his brother-in-law was in the room at the time serving as a translator and he did not want his brother-in-law to know that he was bisexual. How would the gangs know that he was bisexual if his brother didn't know? And that's one of the points that seems to come out. I mean, your client is suggesting that if he returns, he's going to be beaten up and harassed because he's bisexual, and yet he is so understandably closed about it, his own brother doesn't know about it. How is the gang supposed to know? How is anybody supposed to know that that's an issue? I don't know how the gangs will know that he's bisexual, but he has to provide evidence that gay, lesbian, and bisexual people. That's a very general thing, counsel. I mean, as you know, in order to qualify, if he hasn't shown prior torture, which he hasn't, at least as far as the IJ is concerned, you've got to show why that's going to happen in the future, and it's got to be tied to the government or government either acquiescence or direct involvement. And he's citing old country reports, old parts of an advocacy piece that doesn't really tie it to him. There's a fairly high standard there. And Judge Fletcher is just asking, you know, what's in the record that would contradict your client's position? These are a couple of things we talked about. Have you got anything more that you can help us with on that, or are we just going to take it as he said so, therefore it must be? Well, he has provided evidence that friends that he personally knew in El Salvador were beaten, tortured. They were. Yes, so he was not tortured himself, but people that he knew were. I don't know how the gangs found out about the sexual orientation of his friends, but somehow they did. I'll tell you what, let's do. You're over your time, but because of your fine young advocates, we want you to think about your position. We're going to hear from the government, and we'll let you each have a minute to respond. Okay? Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. Mr. Aguilar was placed in removal proceedings, subsequent to his serving a two-year prison sentence for armed robbery. To avoid removal, he applied for deferral of removal under the Convention Against Torture. An immigration judge denied that application, and through counsel, Mr. Aguilar waived appeal. When he subsequently appealed to the immigration judge. Let's stop right there. Did he really waive appeal? Yes, through his attorney, he waived appeal, Your Honor. The counsel did, but he certainly claimed that he didn't. So where are we? Well, Your Honor, counsel acts as the alien's agent. So she is permitted to make decisions on his behalf. There is a question as to whether he. Is that the kind of a decision that counsel can make without the acquiescence of the client? I believe he did acquiesce, Your Honor. If you look at the declaration in the motion to reopen, paragraph 3 of his declaration says that he discussed it with his attorney, waiving appeal, but that his attorney misadvised and misinformed him about the consequences of waiving appeal. Where in this document are you referring to? I'm not sure which record you have. I'm looking at the first one, the first petition, page 17. Is this ER 544? Is that right? Is that the one? It's 7337, 10-7337. Okay. All right. Page 17 is his declaration in the motion to reopen. Paragraph 3 reads, my lawyer at the time did not fully explain the possibilities or relief to appeal the IJ's decision and further instructed me that I waive the right to appeal. So we know that there was some sort of conversation prior to her having the authorization to waive appeal on his behalf. We are not privy to the contents of that conversation because Mr. Aguilar failed to comply with Lozado. Is there a Lozado letter in this file? In other words, did they take the testimony of the attorney who represented Mr. Aguilar and or get a statement as to whether, was it she in this case that was representing him, was a female attorney? There was absolutely no Lozado compliance. So there's no compliance with Lozado at all? At all. And that was one of the major points of the board, that there was absolutely no Lozado compliance. Even Mr. Aguilar's own declaration mentioned that there was a conversation, but he didn't go into detail about his side of what that conversation took place. What is this conversation at page 488, 489? Was that the microphone being off when the proceeding was over? That should not have happened, Your Honor, exactly. Which is what was amazing to me about this record. I'm like, wait a minute. You know, the IJ went off. What we're hearing is the private chat between the lawyer and the client. Exactly. In the private chat, the lawyer says, I waived appeal, meaning for you. Remember how we talked about it when I came to see you? I told you that you could. And then Aguilar says, yeah, in English. And the lawyer goes on that you'd be stuck in here for a while, and Aguilar goes on in English, no, I don't want to be here no more. You understand what happened, right? The whole appeal was at an end, and Aguilar says in English, yeah, they think I'm lying, that's why. So that's not part of the official record, but it's part of the record on appeal. Right. The way the administrative record is transcribed is they will take everything. So you have to be very careful. Sometimes the microphone is still on, and we'll just put it in there. And the Board actually – The President knows about that. So then he waived appeal. He intelligently waived appeal through counsel, and then he appealed. Right. Is that right? Right. Well, I can see that there's a possible argument that he might not have intelligently waived appeal. We don't know for sure because we don't have Lizada compliance. If he had just stuck with the waiver of appeal and not filed anything subsequently, would he have been a free man in El Salvador within a few weeks of this proceeding? Probably not because – well, actually, you're right, Your Honor. He probably would. If he didn't file a motion to reopen, you're right, he would be gone because the first petition – Do they actually put him on a plane after they lose? No. They would need to get travel documents for him because Mexico, as far as I know, is the only country where you don't need travel documents for the alien, so they would have to go through the embassy. So he would stay in jail for a while. For a little while. El Salvador shouldn't take too long, so it would be four to six weeks probably. But since he's a criminal alien, he'd be a priority. What's the rule, counsel? In this case, putting aside the off-record conversation, Mr. Aguilar clearly did not comply with Lizado. What does the case law say about that? And by that, I mean the counsel did not appear and arguably there's no showing of prejudice. So is there any case or cases that indicate what happens there? Well, it's in our brief, Your Honor. Reass is one of the cases. And I believe there is, if I may go to the table. Yeah, please. Okay. Reass is one. Also, Antiveros-Lopez v. INS, which is 213-F3-1121. It explains that the BIA normally acts within its discretion when it opposes the Lizado requirements. In normal cases, it does not abuse its discretion when it denies a motion to reopen based on the Lizado requirements. So basically, I suppose you could call it a presumption that the BIA is not going to reopen if Lizado is not complied with. So basically, in effect, you can't show an IAC claim, which is the predicate for reopening in this case. Is that right? In this case, yes. There are exceptions that this Court has noted, some if there is an obvious and undisputed case. And that could be here if we didn't have that discussion. There might be more of a question as to whether there really was a conversation and whether counsel really did inform him prior to waiving his appeal. But I think that given that off-the-record discussion, we know that there was a conversation and Lizado was necessary in order for them to flesh out the claim. Are we permitted to take that off-record conversation into account? Yes, Your Honor. Under 1252, I believe it's B-2B, the entire administrative record may be considered by this Court. Well, does that answer the question quite? No. It seems almost unfair. They're having a private conversation. They think the mic's off. Nothing's being recorded. And you're saying that we can take that into account. Well, Your Honor, it was part of the administrative record, and it goes to the truth of the matter. So I don't. I don't think it quite answers the question. We're trying to decide whether it should be part of the administrative record. You're saying to me just because it's there, it's part of it. Well, Your Honor, that argument was never raised, so it's waived. I mean, that wasn't raised in the opening brief as an issue. Does it matter that it was the conversation between a lawyer and her client? Well, the conversation was in front of multiple people. It wasn't just a lawyer and client, so I don't think attorney-client privilege. Could the whole room hear this? Yes, Your Honor. My understanding, and I don't know for sure because I've never worked in that court, but most of these cases are done by video teleconference. So you have some. This one, I believe, was done by video teleconference. So you have the attorney and the client in the detention center, and you have the government attorney and perhaps some witnesses or the immigration judge in the actual court. So there's a video feed like this court uses, and, you know, it goes both ways. Okay. Any further questions, Your Honor? Any questions for my colleagues? If not, no, I think we're good. Thank you very much, Your Honor. Thank you very much. We're going to give each of the student advocates a minute to respond. I think I'll be responding. Okay, very good. Thank you. Thank you. Two points quickly. First, giving up the right to appeal to get out of jail does not show a knowing waiver. Just because he wants to get out of jail doesn't mean he understands the implications of a waiver or the pros and cons of that waiver. What's the standard here? As you can appreciate, we have every year hundreds and hundreds, if not thousands, of cases where usually it's in a criminal context, but sometimes in an immigration context, the client says, I just didn't understand. If what we went on was that the attorney under no circumstances is permitted to waive or do anything else on behalf of the client unless the client also gets up and the court conducts a colloquy, you know, the whole system would grind to a halt. Are you suggesting that in this case the attorney, unless she on the record explained everything that she said to the client, that that doesn't count? No, that's not what we're saying here. We're actually saying there are two situations that happened here. The first was that the judge did not directly interact with Mr. Aguilar and request a verbal waiver from Mr. Aguilar. Do you have to? Yes, he does under the current case law in this circuit. But which case? Pro Atovar, I believe, is one of the cases on this point. So you're saying that unless the IJ directly engages with Mr. Aguilar or the attorney to discuss the implications of the waiver, it doesn't count? You're saying our case law says that? Yes. We're saying directly with the client, not with Ms. Malik. That's the rule in this circuit. There needs to be a direct interaction with the client and a verification from the client that he understands in ways. So from your perspective, if that's absent, then any waiver just doesn't mean anything? Yes. A waiver done by the attorney? Yes. That's a remarkable interpretation of our case law. We'll look at it. Okay. The second issue here, really quickly, is that Mr. Aguilar's attorney waived his – if she did waive it, if we assume that there was a conversation before the hearing, she was waiving without understanding anything that could have transpired at the hearing. So Mr. Aguilar could not have given a knowing waiver without understanding what happened at the hearing and whether or not the actions of the judge in this case could have raised a plausible grounds for appeal. Understanding what exactly? What was there to understand that he might not have understood and that might have been material? Well, the fact that the judge did not make the kind of credibility determinations required in this case, she would not have been able to know that before the hearing. So he could not have knowingly waived at the end. And in this case, the judge actually gave Ms. Malik the opportunity to confer with her client, and she declined to do that. So that would have been an opportunity for her to do that. I thought the judge made it quite clear that he rejected the Petitioner's credibility. He did. But the way in which he did it was not correct in this context. He did not point to specific areas in the record where the credibility determinations must be made. So you're saying that. And that raised plausible grounds for relief in this case. You're saying that the waiver of appeal would be ineffective until and unless the lawyer figured out exactly how the credibility determination might be mistaken. That she should have known. I'm thinking that usually takes all the work necessary to prepare a brief on appeal. But she should have known during that hearing that the judge made his ruling without pointing to any specific points in the record, which is established law here, and that that would raise plausible grounds for relief on appeal. And that should have been conveyed to Mr. Aguilar before she waived his right. Thank you. Thank you. Thank you. Thank you very much for the government and for our fine student advocates here. We hope that you will give our regards to Dean Chemerinsky and the fine staff down there at the law school. And thank you to pro bono counsel for helping these young lawyers. We hope that you will take satisfaction in being involved in this system, which does its very best to try to make certain that all of the legitimate avenues to protect your client's interest are covered. Sometimes, well, by definition, somebody's not going to be happy in terms of the ultimate result. But the key is that everybody's argument gets heard. There's due process. And this is a remarkable thing that's not true in every country. So we congratulate you for your participation. And, again, thank you for being here. The case of Aguilar v. United States, or Holder, rather, is submitted. The next case for argument is United States v. Reyes-Ceja.
judges: Fletcher, Kleinfeld, Smith